# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

BRYAN J. IRISH,

<table>
<tr><td></td><td>Plaintiff,</td><td></td></tr>
<tr><td>v.</td><td></td><td>5:14-CV-668<br>(MAD/ATB)</td></tr>
<tr><td>COMMISSIONER OF SOCIAL SECURITY,</td><td></td><td></td></tr>
<tr><td></td><td>Defendant.</td><td></td></tr>
</table>

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
AMANDA J. LOCKSHIN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On August 24, 2010, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning April 15, 2006. (Administrative Transcript ("T") at 21, 266, 271). The application was denied initially on December 7, 2010. (T. 21, 93). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on September 12, 2012. (T. 41-81). On January 4, 2013, ALJ Scott M. Staller found plaintiff was not disabled. (T. 18-38). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 11, 2014. (T. 1–6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth

inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

As of the date of the administrative hearing on September 12, 2012, plaintiff was 41 years old. (T. 166). He had been separated from his wife since November 2011, and lived with his girlfriend and her daughter. (T. 52-53, 69, 625).

Plaintiff left school after the seventh grade, and later obtained his General Equivalency Diploma. (T. 46, 623). His work history includes positions as a service technician and automobile detailer at a car wash, a laborer for a painting company, and most recently, as a tire installer in 2006. (T. 49, 73, 487). Plaintiff reported that he typically only remained at a position for four to five months, before having to leave due to conflicts with his co-workers or supervisors. (T. 57-58). Plaintiff attributed these difficulties to his bipolar disorder and anxiety, and testified to two occasions in which arguments with supervisors or co-workers almost escalated to violence. (T. 57, 59).

Plaintiff was diagnosed with bipolar disorder, post-traumatic stress disorder and attention-deficit disorder and has a history of psychiatric hospitalization and treatment, including suicide attempts in 1995 and 2000. (T. 487). Plaintiff had been prescribed psychiatric medicine on a regular basis since 2007, but was frequently non-compliant with his medications due to unwanted side effects and financial difficulties. (T. 55, 623, 647). Plaintiff testified that his mental impairments caused constant mood swings which made it impossible to be around other people without lashing out. (T. 24, 50) Plaintiff typically avoided grocery stores or other public places due to the potential for violent outbursts. (T. 50). He met his girlfriend online, and they typically avoided eating in restaurants or socializing with others outside the home to minimize his anxiety. (T. 50). Instead, plaintiff and his girlfriend went for rides in the country, and occasionally entertained his girlfriend's friends at home. (T. 51, 54).

Plaintiff fractured his left ankle after slipping on some ice and required ankle surgery in February 2009. (T. 465-66). Post-surgery complications required removal of a screw that had been installed in his ankle during the procedure. (T. 440-41). Plaintiff testified that he still suffered constant pain, and that his ankle would "swell right up like a balloon" if he walked more than three or four blocks. (T. 49).

Plaintiff had a history of alcoholism and substance abuse dating back to his childhood, and several attempts at drug rehabilitation were unsuccessful. (T. 52-53). Plaintiff testified that he only drank alcohol occasionally since 2001, and stopped using illegal drugs in 2006, with the exception of marijuana on limited occasions, including two weeks prior to the ALJ hearing. (T. 24, 52). However, plaintiff's medical history

shows that plaintiff's substance abuse, including cocaine and marijuana use, continued on a regular basis from 2007 to 2012. (T. 358, 386, 442, 467, 482, 620, 624).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 24-30).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

After finding that plaintiff had not engaged in substantial gainful activity since his application date of August 24, 2010, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: status post internal fixation of left ankle fracture, bipolar disorder, post-traumatic stress disorder, and polysubstance abuse. (T. 23).

At step three of the disability analysis, the ALJ found that plaintiff was effectively disabled due to mental impairments, including the substance abuse disorder, that produced associated symptoms so severe that they met listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (T. 24).  Listing 12.04 contains a section, referred to as "paragraph A", describing the impairment itself with "medically documented findings."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A).  In addition to having medically documented findings, the plaintiff's impairment must meet the requirements in "paragraph B."[1]  Paragraph B requires that the impairment result in "at

_____

[1]  Listing 12.09 is a reference listing which serves to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances.  Among the impairments which must be

6

least two" of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning, or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 12.04(B)(1)-(B)(4). If plaintiff does not meet the "paragraph B" criteria, he cannot meet the listing, regardless of whether the other requirements are met.

The ALJ found that the "paragraph A" criteria were satisfied because plaintiff had depressive syndrome characterized by symptoms including anhedonia, sleep disturbance, thoughts of suicide, paranoid thinking, difficulty concentrating, and appetite change. (T. 24). The ALJ further found that plaintiff had demonstrated manic syndrome characterized by hyperactivity, pressure of speech, flight of ideas, easy distractibility, and involvement in activities that have a high probability of painful consequences. (*Id.*).

The ALJ also found that the "paragraph B" criteria were satisfied because plaintiff's mental impairments, including the substance abuse disorder, caused at least two "marked" limitations or one marked limitation and "repeated" episodes of decompensation. In making this determination, the ALJ gave significant weight to medical opinions provided by treating physicians Dr. Kiyashi Kimura, Dr. Ahmed

---

considered are Listings 12.02 (organic mental disorders); 12.04 (depressive syndrome); 12.06 (anxiety disorders); and 12.08 (personality disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09(A)-(I).

Raslaan Nizar, and Dr. Stephen Coleman, who had all evaluated plaintiff during periods when he was abusing alcohol and/or drugs. (T. 24-25). The ALJ also relied upon the objective medical record, which the ALJ found to document "marked limitations in all areas of functioning associated with continued substance use." (T. 25).

Because the ALJ found that the severity of plaintiff's impairments was affected by substance abuse, including alcohol, marijuana, crack cocaine, and hallucinogens, the ALJ continued with the sequential analysis to determine whether plaintiff's disability would persist if plaintiff stopped his substance abuse. (T. 25).

Under this analysis, the ALJ found that if plaintiff abstained from abusing alcohol or drugs, plaintiff's status post internal fixation of the left ankle fracture, bipolar disorder, and post-traumatic stress disorder would still constitute severe impairments. (*Id.*). However, the ALJ found that the record did not support a finding that these impairments, singly or in combination, medically met or equaled the criteria of any listed impairment if plaintiff's substance abuse stopped. (*Id.*).

The ALJ found at step four of the analysis that, if plaintiff stopped his substance abuse, plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b), with certain limitations. (T. 27). Specifically, the ALJ concluded that: plaintiff would be able to understand, remember and carry out simple instructions as well as make judgments on simple work-related decisions; plaintiff could maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms; plaintiff could perform a job with only occasional decision-making and only

occasional changes in the work setting; and plaintiff should have only brief, infrequent, and superficial contact with the public and only occasional contact with co-workers and supervisors. (T. 27).

In making the RFC determination, the ALJ stated that he considered all the plaintiff's symptoms, and the extent that those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 96-4p and 96-7p." (*Id.*). The ALJ also considered opinion evidence in accordance with 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

As to physical impairments, the ALJ considered plaintiff's statement that he suffered pain after walking more than two or three blocks, climbing stairs, or engaging in weight-bearing activities. (T. 28, 49, 492). During the consultative physical exam, plaintiff was observed to walk with a limp and was unable to walk on heels and toes without difficulty. (T. 28, 493). Plaintiff needed no assistance in moving about, did not use a cane or other device, and was able to perform a full squat. (T. 28, 493). The consultative examiner, Dr. Lisa Shirley-Williams, opined that plaintiff had a moderate limitation for prolonged walking, climbing stairs, and for activities that involved repetitive movement at the left ankle. (T. 28, 495). After noting the lack of other recent treatment records relating to plaintiff's left ankle, the ALJ concluded that a light exertional limitation was consistent with Dr. Shirley-Williams' medical opinion and the objective medical evidence. (T. 28-29).

The ALJ also relied upon the consultative exam of Dr. Dennis Noia in his RFC

assessment, as it was the only available medical evidence regarding plaintiff's mental health when not using alcohol and drugs. (T. 28, 487-91). Dr. Noia concluded that plaintiff was capable of understanding and following simple instructions while completing simple and some complex tasks. (T. 29, 490). Dr. Noia found that plaintiff was capable of interacting moderately well with others and maintaining adequate attention and concentration. (T. 29, 489). During the exam, plaintiff stated that he had not used drugs or alcohol recently and described himself as capable of independently functioning including bathing, grooming and dressing himself, as well as cleaning and cooking for himself and performing general housework. (T. 25, 489-90).

The ALJ found that, absent substance abuse, plaintiff would have moderate difficulties in social functioning. (T. 26) While plaintiff testified that he did not like to leave his home for fear of getting into an argument with others, he lived with his girlfriend and her daughter, and occasionally accompanied his girlfriend out in public. (T. 26, 50). During the consultative exam, Dr. Noia described plaintiff as cooperative and responsive, and his manner of relating, social skills and overall presentation were moderately adequate with no evidence of delusions or disordered thinking. (T. 26, 487, 489).

The ALJ also found that if plaintiff ceased his abuse of alcohol and drugs, plaintiff only had moderate difficulties with regard to concentration, persistence or pace. (T. 26). During the consultative exam, plaintiff demonstrated intact attention and concentration, and his memory and cognitive functioning likewise appeared normal. (T. 26, 489).

After considering the evidence, the ALJ found that plaintiff was not fully credible with respect to the intensity, persistence, and limiting effects of his symptoms absent substance abuse. (T. 28). Plaintiff's testimony regarding his mental impairments while using alcohol and drugs was considered credible. (T. 24).

At step four, the ALJ also determined that plaintiff had no relevant past work. (T. 30). At step five, the ALJ relied upon the testimony of a vocational expert to conclude that absent substance abuse, there would be a significant number of jobs in the national economy that plaintiff could perform in light of his age, education, work experience and RFC. (T. 31).

Finding that plaintiff's substance abuse was a contributing factor material to the determination of disability, the ALJ concluded that plaintiff would not be disabled if he ceased his substance abuse, and that therefore plaintiff was not disabled at any time from the date that the application for benefits was filed through the date of the decision. (T. 32).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.     The ALJ erred in finding that plaintiff's substance abuse was material to the determination of disability. (Pl.'s Br. at 15-19) (Dkt. No. 10).

2      The ALJ's credibility finding is not supported by substantial evidence. (Pl.'s Br. at 20-22).

3.     The ALJ's step five determination is not supported by substantial evidence. (Pl.'s Br. at 22-23).

Defendant argues that the Commissioner's determination is supported by substantial

evidence and should be affirmed. (Def.'s Br. at 5-11) (Dkt. No. 15). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

**DISCUSSION**

**VI.** <u>**SUBSTANCE ABUSE**</u>

    **A.**    **Legal Standards**

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir.2012) (citing 20 C.F.R. § 416.935(a)). Pursuant to the Contract with America Advancement Act, "[a]n individual shall not be considered ... disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing 42 U.S.C. § 1382c (a)(3)(J)). Accordingly, if the ALJ finds that the plaintiff is disabled utilizing the standard sequential analysis, and there is medical evidence of the plaintiff's drug addiction or alcoholism, the ALJ must then determine whether he would still find the plaintiff disabled if he stopped using drugs or alcohol. *DiBenedetto v. Colvin*, No. 5:12-CV-1528 (GLS) 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014).

As part of his general burden to prove that he is disabled, the plaintiff bears the burden of proof to show that his drug addiction or alcoholism is not material to his disability. *See Cage*, 692 F.3d at 123–125; *Milks v. Colvin*, No. 3:13-CV-1571 (GTS), 2015 WL 58382, at *4 (N.D.N.Y. Jan. 5, 2015). An ALJ may make the materiality

determination even where there is no medical opinion addressing whether a drug or alcohol addiction is a contributing factor to a plaintiff's disability. *Cage*, 692 F.3d at 126. Such determination can instead be based on the record as a whole. *See Smith v. Comm. of Soc. Sec.*, No. 5:12-CV-1879 (GLS/ESH), 2014 WL 3392336, at *7 (N.D.N.Y. July 10, 2014).

### B. Application

Plaintiff contends that the ALJ lacked substantial evidence to conclude that plaintiff's substance abuse was material to the finding of disability because no medical source made such a finding. (Pl.'s Br. at 15-16). Instead, the ALJ looked at the record as a whole, and compared the available medical opinions from the period when plaintiff was using drugs and alcohol with the opinions from the period when plaintiff's substance abuse was in remission. (T. 24-30). The Second Circuit has held that such a comparison to "periods of sobriety," even brief ones, constitutes substantial evidence to support a determination that a plaintiff would not be disabled were he or she to discontinue alcohol and/or drug abuse. *See Cage*, 692 F.3d at 127 (favorable mental health evaluations conducted during inpatient drug rehabilitation admissions, when plaintiff had no access to drugs or alcohol, satisfied substantial evidence standard). Accordingly, this court concludes that the ALJ's determination was supported by substantial evidence.

Specifically, the ALJ concluded that plaintiff showed marked limitations in at least two areas of functioning, or at least one marked limitation and "repeated" episodes of decompensation during the periods when plaintiff was abusing alcohol and drugs. (T.

13

25).  In doing so, the ALJ gave significant weight to the medical opinion of Dr. Kiyashi Kimura, plaintiff's treating physician between February 2008 and April 2011. (T. 24, T. 648).  In a December 2009 Medical Source Statement, Dr. Kimura found that plaintiff had marked restrictions in all areas of functioning. (T. 24, 455).  Dr. Kimura noted that plaintiff had poor concentration and poor motivation along with reclusive tendencies that affected his overall functioning. (T. 24, 454).  In a May 2, 2011 report, Dr. Kimura found that plaintiff was "an incapacitated person as a result of mental disease, defect and/or derangement at the last appointment on April 14, 2011. If he complies with treatment and gets the full benefit, he may not be an incapacitated person at all." (T. 648).

In evaluating the impact of plaintiff's substance abuse, the ALJ also gave significant weight to the opinions of Dr. Steven Coleman and Dr. Ahmed Raslaan Nizar. (T. 25).  Dr. Coleman examined plaintiff in December 2011 and concluded that "given his array of various diagnoses and current presentation, it would seem to be a stretch to imagining Mr. Irish being successful in a typical work setting.  The combination of cognitive and behavioral patterns, with the former apparently leading [plaintiff] to not even consider alternative ways of reacting to others, as well as not considering maintaining restraints in various settings, including public stores, appear to make [plaintiff] indeed high risk for exhibiting additional illegal activities of an acting-out nature." (T. 626).  Dr. Nizar  treated plaintiff on a regular basis beginning in February 2012, and found that plaintiff became highly agitated when in close proximity to others, was highly distractible, and easily irritated. (T. 640).  Dr. Nizar concluded

that plaintiff would likely be bothered by changes in routine, and could not cope with normal work stress. (*Id*.).

The ALJ noted that the opinions of Dr. Kimura, Dr. Coleman and Dr. Nizar were all made while plaintiff was actively abusing alcohol and/or drugs. (T. 24-25). This finding is supported by the hearing testimony and the record. Plaintiff testified that from approximately the age of ten, he had abused alcohol and illegal drugs, including hallucinogens, cocaine, and marijuana. (T. 53). He testified that he stopped binge drinking in 2001, but still drank alcohol on occasion. (T. 52, 69). Plaintiff also testified that he had not used illegal drugs since 2006, but subsequently admitted that he had smoked marijuana "five to six times" since then, including two weeks prior to the ALJ hearing. (T. 52, 69).

Plaintiff's medical records, cited by the ALJ, indicate a history of alcohol and drug abuse, particularly cocaine and marijuana, that extends beyond 2006. For example, a November 19, 2007 Discharge Summary prepared by Central New York Services, Inc. Dual Recovery Program notes that plaintiff did not complete the program, and that plaintiff "continued to use marijuana and eventually crack prior to discharge." (T. 358). In April 2008, plaintiff was referred to St. Joseph's Hospital Health Center after threatening suicide. (T. 388). During intake, plaintiff reported that he had used cocaine within the past three weeks. (T. 386). In February 2009, plaintiff was admitted to Crouse Hospital for his ankle fracture, and reported that he had been using crack cocaine on a daily basis, and marijuana approximately twice a week. (T. 467, 482). Plaintiff's related ankle surgery had to be postponed for several days due to the risk

posed by anesthesia while plaintiff had cocaine in his system. (T. 442). Dr. Coleman's December 12, 2011 Psychological Evaluation Report notes that plaintiff "talked about current only occasional alcohol use, but then later stated that he had approximately 1 ½ months ago downed a 'bottle of vodka' and ingested a 'bottle' of over-the counter sleep medications. . . . Mr. Irish is currently back into marijuana, using approximately two times per week, and this may well be to deal with his mental status without being supported by the psychotropic medications that he had used for several years." (T. 624). Dr. Nizar's June 2012 Initial Psychiatric Assessment noted that plaintiff "would benefit from cutting down his marijuana use. He seems to have symptoms of Bipolar here, though it is hard to tell due to the chronic substance abuse. He has never had a major period without any drug use." (T. 620).

Despite plaintiff's extensive history of substance abuse, the ALJ concluded that the record "does document periods of sobriety where [plaintiff] has exhibited improved functioning." (T. 29). In particular, the ALJ identified the November 2010 consultative exam of Dr. Dennis M. Noia. (T. 29). During this exam, plaintiff reported that his cocaine and marijuana use was in remission, and Dr. Noia found him to be cooperative and responsive, with "moderately adequate" social skills and overall presentation. (T. 489). Dr. Noia described plaintiff's thought processes as "coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking." (*Id.*). In contrast to the marked limitations described while plaintiff was abusing alcohol or drugs, Dr. Noia concluded that plaintiff "appears capable of understanding and following simple instructions and directions . . . . capable of performing simple and some complex tasks

with supervision and independently . . . . [and] appears to be able to relate to and interact moderately well with others. (T. 490). Dr. Noia noted that plaintiff appeared to be having difficulty dealing with stress, and recommended that plaintiff continue with current psychological and psychiatric treatment. (*Id.*).

While relying on Dr. Noia's opinion regarding plaintiff's condition when he was not abusing alcohol or drugs, the ALJ also gave significant weight to Dr. Kimura's opinion that "if [plaintiff] complies with treatment and gets the full benefit, he may not be an incapacitated person at all."[2] (T. 29, 648). The ALJ assigned less weight to Dr. Coleman's and Dr. Nizar's opinions that plaintiff's mental limitations would persist regardless of substance abuse, and noted that neither physician had evaluated plaintiff's functioning during a period of sobriety, given his long history of drug use. (T. 30, 638-42). The ALJ also rejected Dr. Nizar's conclusion that plaintiff's mental health issues predated his substance abuse, by noting plaintiff's consistent drug use beginning in childhood. (T. 30, 642). Each of these conclusions is supported by the testimony and record evidence described above.

Accordingly, the ALJ's reliance on Dr. Noia's evaluation during a period of sobriety was acceptable, even if it represented only a brief period of sobriety. *See DiBenedetto v. Colvin*, No. 5:12-CV-1528 (GLS), 2014 WL 1154093, at *3 (N.D.N.Y. Mar. 21, 2014) (determination was supported by substantial evidence where ALJ relied

---

[2]    While Dr. Kimura appears to be directly referring to plaintiff's medication noncompliance, the ALJ also considered plaintiff's continued substance abuse to constitute non-compliance with treatment that would disqualify plaintiff for benefits pursuant to 20 C.F.R. 416.930(a)). (T. 30).

upon positive evaluations of plaintiff during hospital stay, during which plaintiff had no access to alcohol or illegal drugs). It is well-established that the report of a consultative examiner may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). Thus, the ALJ's determination that plaintiff would not be disabled were plaintiff to discontinue his drug and alcohol abuse is supported by substantial evidence.

## VII. **CREDIBILITY**

### A.    **Legal Standards**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce

the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 416.929(c)(3).

### B.    Application

The ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment . . . ." (T. 28).  The ALJ based his credibility assessment on inconsistencies between plaintiff's testimony and the record evidence regarding plaintiff's physical and mental impairments. (T. 28).  For example, plaintiff testified that his ankle injury caused him constant pain, and that his left ankle swelled if he walked more than two or three blocks. (T. 28, 49, 60).  The ALJ

19

noted that the limited treatment and examination records for plaintiff's ankle post-surgery were inconsistent with plaintiff's testimony. (T. 28). A November 15, 2010 report by plaintiff's orthopedic surgeon found pain with simple ambulation as well as slightly reduced range of motion and strength. (T. 28, 646). Additional surgery was not recommended unless the conditioned worsened. (T. 645). A consultative physical exam performed by Dr. Shirley-Williams on November 3, 2010 found "moderate limitation for prolonged walking, climbing stairs, and also for activities that involve repetitive movement of the left ankle such as operating foot controls." (T. 28, 495). Relying on Dr. Shirley-Williams' opinion, the ALJ concluded that plaintiff's ankle injury caused only light exertional limitations.[3] (T. 28).

The ALJ found that plaintiff's testimony regarding his mental limitations while abusing alcohol or illegal drugs was credible, but that plaintiff's testimony regarding his condition absent substance abuse was contradicted by the record. (T. 29). During the ALJ hearing, plaintiff testified that his anxiety and mood swings worsened when he stopped using drugs. (T. 71). In contrast, during the consultative exam when plaintiff's cocaine and marijuana use was in remission, plaintiff was cooperative and responsive, with coherent thoughts and intact attention and concentration. (T. 489). During this exam, plaintiff described himself as capable of independently functioning, including bathing, grooming, cooking and cleaning for himself. (T. 29, 489-90).

Plaintiff argues that the ALJ did not consider that many of the daily activities that

---

[3] Plaintiff did not object to the ALJ's determination of plaintiff's physical impairments in his brief.

plaintiff described occur in solitude, and plaintiff was unlikely to perform at the same level in a work setting on a consistent basis over an eight hour workday and five day workweek.[4] (Pl.'s Br. at 20). However, the ALJ considered the medical reports of Dr. Coleman, Dr. Nizar, and Dr. Noia , who each found, to varying degrees, that plaintiff retained satisfactory abilities to carry out short and simple instructions, make simple work-related decisions, ask simple questions and maintain attention for two hour segments in an eight hour workday. (T. 490, 636, 640).

The ALJ incorporated the relevant medical opinions into his RFC assessment along with those portions of plaintiff's testimony that he deemed credible, as evidenced by his finding that plaintiff could perform light work with certain limitations: only simple instructions and simple work-related decisions; only brief, infrequent, and superficial contact with the public and only occasional contact with co-workers and supervisors; and only occasional decision-marking and occasional changes in the work setting. (T. 27). In light of plaintiff's impairments, the ALJ also found that plaintiff could maintain attention for two-hour segments over an eight hour workday. (*Id.*).

The ALJ is not required to credit a plaintiff's testimony where it is unsupported by the objective medical evidence. *Lewis v. Colvin*, No. 13-436, 2013 WL 6596942, at *2 (2d Cir. Dec. 17, 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

---

[4] Plaintiff also argues that the ALJ failed to consider the side effects of plaintiff's medications. Plaintiff testified that he stopped seeing Dr. Kimura in August 2011 because of plaintiff's concerns that he was being over-medicated, and that the medication caused him to feel like a zombie and suffer gastrointestinal problems and sexual side effects. (T. 63). Plaintiff does not explain how these concerns would have affected the outcome of the ALJ's analysis, so this court considers any such oversight to be harmless error.

2004)).  As the ALJ's credibility assessment in this proceeding was based upon the inconsistencies between plaintiff's testimony and plaintiff's medical records, the determination was supported by substantial evidence.

## VIII. **VOCATIONAL EXPERT**

### A.    **Legal Standards**

At step five of the disability analysis, the burden of proof shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational Guidelines ("the Grids").  *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).  But if plaintiff has non-exertional impairments, and if those non-exertional impairments "significantly limit the range of work" permitted by his exertional impairments, the ALJ may be required to consult a vocational expert ("VE").  *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

If the ALJ does use a VE, he presents the expert with a set of hypothetical facts to determine whether plaintiff retains the capacity to perform any specific job.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper.  *Id*. at 276-277.  Conversely, a VE's

opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. *See DeLeon v. Sec'y of Health and Human Servs.*, 734 F.2d. 930, 936 (2d Cir. 1984) (finding that, as a result of the ALJ's failure to present the full extent of the claimant's physical disabilities to a vocational consultant, the record provided no basis for drawing conclusions about whether the claimant's impairments rendered him disabled).

### B.    Application

Plaintiff contends that the ALJ's hypothetical question to the VE reflected the allegedly improper conclusion that plaintiff's substance abuse was material to the finding of disability. (Pl.'s Br. at 23). This court disagrees.

The ALJ asked the VE to assume a 41-year-old individual with a seventh grade education and experience as a detailer and a painter who could perform no greater than light work; who was able to understand, remember, and carry out simple instructions; who could make judgments on simple work-related decisions; who should have only brief, infrequent, and superficial contact with the public and only occasional contact and interaction with co-workers and/or supervisors; who could maintain attention and concentration for two-hour segments over an eight-hour period and could complete a normal work week without excessive interruptions from psychologically or physically based symptoms; and who was limited to jobs that require only occasional decision-making and only occasional changes in the work setting. (T. 73-74). The VE testified that with these restrictions, the individual could not perform plaintiff's past work, but named three jobs that the individual could perform: housekeeping cleaner, laundry

worker, and ironer. (T. 74).

The ALJ's hypothetical to the VE mirrored the conclusions in the RFC assessment. (T. 27, 73). As stated above, the ALJ's consideration of plaintiff's history of substance abuse and its impact on plaintiff's disability in determining that RFC was consistent with the regulations and relevant caselaw. Thus, the hypothetical question to the VE was based on substantial evidence and accurately reflected the plaintiff's limitations. Accordingly, the ALJ's decision, which relied upon the VE's testimony, is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 23, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge